IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| APRYL DAWN MENDOZA and GABRIEL ERIC MENDOZA, § § § | | |
| Plaintiffs, § § | | |
| v. § | 2:24-cv-169-BR | |
| § | | |
| AMARILLO INDEPENDENT SCHOOL DISTRICT, § § § § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

On August 25, 2022, J.M.,[1] a fourteen-year-old young man diagnosed with epilepsy and asthma, died as the result of a prolonged seizure that occurred the previous day while at school. (ECF 20 at 4-5). Plaintiffs Apryl Dawn Mendoza and Gabriel Eric Mendoza, as the co-independent administrators of J.M.'s estate, filed this lawsuit against the Defendant, Amarillo Independent School District ("AISD"), on August 9, 2024. (ECF 1). Plaintiffs' First Amended Complaint[2]

---

[1] Generally, federal court filings may not include the full name of any minor child, and must identify minors by their initials only. Fed. R. Civ. P. 5.2(a)(3). A person may waive protection of their own personal information by including it in a public, unredacted court filing. Fed. R. Civ. P. 5.2(h). The Court notes a split of opinion regarding whether a minor who is deceased may be referred to using their full name, or must instead be referred to using only initials. *Compare Baker v. Brewer*, No. 2:15-cv-11629, 2021 WL 1791553, n. 1 (E.D. Mich. May 5, 2021) ("Because the victim was a minor at the time of the offense [eleven years prior to proceedings], the Court will refer to him by his initials only to preserve his privacy."), *Griffin v. Poynter*, No. 1:20-cv-1427, 2022 WL 16836605 (C.D. Ill. Nov. 9, 2022) (referring to a deceased minor by her initials), *Ramirez v. Kingman Hosp. Inc.*, No. 3:17-cv-08026, 2018 U.S. Dist. LEXIS 145988 (D. Ariz. Aug. 28, 2018) (ordering refiling in redacted form the autopsy report of a minor), *and Ramos v. Cremar*, No. 5:15-cv-55, 2017 WL 4512563 (S.D. Tex. May 12, 2017) (referring to a deceased minor by his initials), *with Estate of Carmichael v. Galbraith*, No. 3:11-cv-622, 2012 WL 13568, n. 1 (N.D. Tex. Jan. 4, 2012) (referring to a deceased minor by name "because his identity has been revealed in public pleadings."), *Mines v. Selma City Bd. Of Educ.*, No. 2:24-cv-108, 2025 WL 863638, n. 1 (S.D. Ala. Mar. 19, 2025) ("Here, the concealment of the minor's identity is not required because the minor is deceased, and the Complaint fully identifies him."), *and Estate of Brown v. Ogletree*, No. 4:11-cv-1491, 2012 WL 591190, n. 1 (S.D. Tex. Feb. 21, 2012) (referring to a deceased minor by name "because his identity has been revealed in public pleadings."). Without deciding whether such redaction is mandatory under the Federal Rules or is waived by Plaintiffs' filings, and out of respect for the privacy of the deceased minor in this case, the Court refers to him by his initials only. If Plaintiffs decide later in this litigation that the minor's name should be removed from public filings by the parties, Plaintiffs' counsel may contact the chambers of the undersigned for directions and assistance.

[2] The Court granted an unopposed motion for leave to amend on October 4, 2024. (ECF 19).

asserts claims against AISD for violation of Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act. (ECF 20 at 5-8). Now before the Court is AISD's motion to dismiss Plaintiffs' First Amended Complaint for failure to state a claim. (ECF 26). Having considered the Motion, the arguments of the parties, and applicable law, the Court DENIES the Motion to Dismiss.

## I.     PROCEDURAL BACKGROUND

Prior to initiating this lawsuit in Federal Court, Plaintiffs sued AISD in Texas state court, including for tort claims. (*See* ECF 28 at 3-12) (Plaintiffs' Original Petition). Texas state law requires plaintiffs pursuing health care liability claims to produce preliminary expert reports in support of their claims. Tex. Civ. Prac. & Rem. § 74.351; *see Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) ("The purpose of these requirements is to weed out frivolous malpractice claims in the early stages of litigation." (cleaned up)). Plaintiffs filed two such reports in their state-court lawsuit. (ECF 34 at 13-14). After AISD challenged the Plaintiffs' tort claims, Plaintiffs non-suited and initiated this lawsuit in federal court. (*Id*.; ECF 27 at 1).

AISD's Motion to Dismiss turns solely on whether Plaintiffs' First Amended Complaint adequately alleges intentional discrimination. In briefing this issue, the parties have hotly contested the significance of the Section 74.351 expert reports mentioned above.

## II.     DISMISSAL STANDARD

The Federal Rules of Civil Procedure allow for dismissal of a complaint if it fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a claim must satisfy the standards of Rule 8, as those standards have been articulated in past jurisprudence. *See* Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *and Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (together setting the standard for a plaintiff's factual allegations to survive a Rule 12(b)(6) motion).

Pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The pleading does not need to prove the plaintiff's case, and a court evaluating a Rule 12(b)(6) motion must view all well-pleaded facts in the light most favorable to the plaintiff. *Hodge v. Engleman*, 90 F.4th 840, 843-4 (5th Cir. 2024). However, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hodge*, 90 F.4th at 843 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

This determination involves a two-step process. *See Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019); *see also Iqbal*, 556 U.S. at 679. The first step is to set aside any "conclusory allegations, unwarranted factual inferences, or legal conclusions" made by the plaintiff, which a court cannot assume to be true when deciding a Rule 12(b)(6) motion. *Hodge*, 90 F. 4th at 843, *and Waller*, 922 F.3d at 599. The second step is to determine whether sufficient allegations remain in the complaint for the court to reasonably infer that the plaintiff's case is plausible, rather than merely possible or speculative. *Waller*, 922 F.3d at 599 (citing *Iqbal*, 556 U.S. at 678-9).

When going through this process, courts generally will not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). If such material is not excluded from consideration, a court must convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56, which requires prior notice to the parties and sufficient opportunity for the plaintiff to respond to the allegations or evidence submitted by the movant. *Id.*; *see also Hodge*, 90 F.4th at 843. Documents that a defendant attaches to a motion to dismiss are matters outside the pleadings unless they are referred to in the complaint and are central to the plaintiff's claims. *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

However, to the extent relevant, a court may also consider matters subject to judicial notice. *Id*. A court may take judicial notice of facts that are "not subject to reasonable dispute," either

3

because such fact is "generally known" within the court's jurisdiction or else because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For example, a court may judicially notice relevant facts that are beyond reasonable dispute and are established in documents of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Judicial notice of appropriate facts can be taken *sua sponte*, but is mandatory on motion of a party. Fed. R. Evid. 201(c).

In summary, when deciding a motion to dismiss for failure to state a claim, a court must set aside everything but the well-pleaded allegations in the plaintiff's pleadings, then must determine whether those allegations, in light of any judicially-noticed facts, establish any plausible right to relief for the plaintiff. If no plausible right to relief is established, the claim must be dismissed.

### III.     THE ADA AND THE REHABILITATION ACT

The ADA and the Rehabilitation Act establish rights to relief for disabled individuals who have been subjected to discrimination. *See Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 159-60 (2017) *and J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023). Title II of the ADA, codified at 42 U.S.C. §§ 12131 *et seq.*, provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Similarly, Section 504 of the 1973 Rehabilitation Act, codified at 29 U.S.C. § 794, provides that:

> no otherwise qualified individual with a disability…shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a) (emphasis added). Section 504 applies to all programs receiving federal funds, but requires that a claimant's disability be the only reason for the discriminatory actions—a stricter

4

causation standard than that of Title II, which applies only to public entities. *See Paley*, 81 F.4th at 449. Both Acts provide for the vicarious liability of covered entities for the acts of the entity's employees, and the liability standards under both Acts are the same. *Id*.

To recover damages under either Act, a plaintiff must show that a defendant's conduct was intentional. *Id*. The Fifth Circuit has declined to articulate any rigid test for intentionality in these cases, but there is a substantial body of case law analyzing the requirement, especially in the failure-to-accommodate context. *Id.* at 449-50. The requirement is for "something more than deliberate indifference." *Id.* at 450. As a *de minimis* threshold, the defendant must have had actual knowledge that a reasonable accommodation was necessary. *Id*. The requirement is obviously satisfied by (but not necessarily limited to) showings of a discriminatory motive or malicious animus. *Id*.

## IV.   FACTUAL BACKGROUND[3]

J.M. was diagnosed with epilepsy and asthma in 2019. (ECF 20 at 2). He was prescribed various preventative and emergency medications, but these treatments did not completely eliminate his seizures. (*Id.* at 3-4). When he had a seizure, it would typically last around two and a half minutes. (*Id.* at 5). An action plan was filed with AISD detailing the steps that should be taken to manage his epilepsy, or to respond if he had a seizure while at school. (*Id.* at 4; *see id.* at 14-16).

This action plan required that, if any seizure lasted longer than five minutes, J.M. should be given five milligrams of nasal midazolam, and that if the seizure continued for another minute after that, emergency services should be contacted. (*Id.* at 15). The prescribed midazolam was kept in the school nurse's office. (*Id.* at 4). The action plan on file with the school also included

---

[3] The factual allegations in this section are taken from Plaintiffs' filings and are assumed to be true for purposes of this Order. *See Hodge*, 90 F.4th at 843.

5

"General Guidance" to call 911 if any seizure lasted longer than five minutes or if J.M. had repeated seizures without regaining consciousness. (*Id.* at 15). The action plan was distributed to at least some teachers. (*Id.* at 4).

On August 24, 2022, around noon, J.M. began doing outdoor warm-up exercises with his high school basketball team. (*Id.*). There was no extreme weather or other indication that outside exercise would have been unsafe on that day. (*Id.*). Around 12:15 p.m., school "staff called Apryl Mendoza to notify her that J.M. was seizing and that emergency medical services were en route." (*Id.* at 4-5). Apryl then called Gabriel Mendoza, who traveled to the school. (*Id.* at 5). When Gabriel arrived, J.M. had been seizing for approximately seventeen minutes. (*Id.*). He was frothing at the mouth and his skin was graying. (*Id.*). He had not received the prescribed dose of nasal midazolam. (*Id.*). Emergency responders arrived and performed CPR before placing J.M. in an ambulance and transporting him to the hospital. (*Id.*). J.M. died the following day. (*Id.*).

## V.    ANALYSIS

AISD argues that Plaintiffs cannot show the intentionality necessary to recover compensatory damages under the ADA and the Rehabilitation Act. (ECF 27 at 1-2). Instead, AISD argues that, even when accepting all of Plaintiffs' factual allegations as true and construing them in the light most favorable to their case, Plaintiffs' pleadings make a plausible case for negligence at most. (*Id.* at 6). To support this argument, AISD has attached one of the expert reports that Plaintiffs filed in their original, voluntarily-dismissed state court suit for tort liability, and has asked that the Court take judicial notice of it. (ECF 27 at 5; *see* ECF 28 at 30-32 (the expert report of Monica Porras, MSN, RN, NCSN)).

### A.    The Expert Report

As a preliminary matter, the Court declines to convert AISD's Motion to Dismiss to a motion for summary judgment, and so will only consider matters external to the pleadings to the extent such matters are appropriate for judicial notice. *See Hodge*, 90 F.4th at 843. AISD argues

that judicial notice of Ms. Porras' report is appropriate because, as a "previously filed pleading," it is a "public record." (ECF 27 at 5). AISD further argues that the report, in which Ms. Porras opines that the acts and omissions of AISD staff amounted to negligence, supports AISD's argument that Plaintiffs cannot show intentionality. (*Id.* at 7; ECF 35 at 3).

Plaintiffs respond that the report is not an appropriate matter for judicial notice. (ECF 34 at 5). Plaintiffs argue that the Court could take judicial notice of the fact the expert report exists, or of the fact that it was filed in state court, but cannot judicially notice as facts in this litigation the allegations from the expert report filed in prior state-court litigation. (*Id.* at 5-6). Plaintiffs argue that AISD would not agree its staff was negligent on the occasion in question, meaning the allegations to that effect in the report are subject to reasonable dispute and cannot be judicially noticed. (*Id.* at 6-7).

The Court generally agrees with Plaintiffs. Judicial notice of Plaintiffs' filings in other courts is appropriate, but judicial notice of the facts asserted in those filings is not. *See Lewis v. Danos*, 83 F.4th 948, 949-55 (5th Cir. 2023). Phrased differently, if the Court were to make a factual finding that AISD was negligent in connection with J.M.'s death based solely on the expert report, the Court would clearly be in error; if this case were to proceed to trial, AISD would be expected to rightfully object to such a finding. Indeed, AISD in its own brief "adamantly denies that the District or any of its employees acted negligently in connection with the events" underlying this suit. (ECF 27 at 6, n. 17). Thus, the facts alleged in the expert report are in dispute and are not an appropriate matter for judicial notice.

AISD's argument in reply, that at the dismissal stage the Court is obliged to accept factual allegations made by the Plaintiffs as true, is inapposite. (*See* ECF 35 at 1). The expert report filed by Plaintiffs in their prior state court lawsuit is not included in the well-pleaded factual allegations of the instant proceeding. If it were, it would not be necessary for the Court to take judicial notice of the report. To consider the report as evidence relevant to AISD's Motion to Dismiss without

taking judicial notice, the Court would have to convert that Motion to one for summary judgment. Fed. R. Civ. P. 12(d). And a single expert opinion that AISD staff failed to exercise ordinary care on the occasion in question would not be decisive summary judgment proof that AISD was not intentionally discriminatory under either Act.

Similarly, the Court agrees with Plaintiffs that finding AISD staff was negligent in providing medical care to J.M. would not preclude finding that AISD intentionally discriminated against J.M. in failing to provide reasonable accommodations for his disabilities. (*See* ECF 34 at 14). In other words, taking judicial notice of the report as urged by AISD would not render Plaintiffs' claims implausible; thus, doing so would not establish grounds to dismiss Plaintiffs' claims. In summary, the Court declines to consider the expert report by Ms. Porras, either by taking judicial notice of its contents or by converting AISD's Motion to Dismiss to one for summary judgment. Further, even if the Court were to consider the report, doing so would not lead the Court to grant AISD's Motion to Dismiss.

### B.     *The Sufficiency of Plaintiffs' Allegations*

Plaintiffs' claims are premised on the theories that AISD refused to train staff in a manner that would have reasonably accommodated J.M.'s disability and that AISD staff refused to administer his emergency medication. (ECF 20 at 6-8). The factual allegations in Plaintiffs' First Amended Complaint, when taken as true and construed in the light most favorable to Plaintiffs, are sufficient for the Court to reasonably infer that these theories are plausible, rather than merely possible or speculative. *See Waller*, 922 F.3d at 599.

As noted above, actual knowledge is a prerequisite to intentional discrimination in these cases. *Paley*, 81 F.4th at 450. This means a school district needs actual knowledge of student disabilities, of the limitations resulting from those disabilities, and of the way those limitations will exclude students unless reasonable accommodations are made. *Id*. If a school district, out of deliberate indifference to these known facts, does not provide those accommodations, the Fifth

8

Circuit[4] limits plaintiffs to equitable relief forcing such accommodations. *See, e.g.*, *Miraglia v. Bd. of Supervisors of the La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (noting that equitable claims do not require a showing of intent). If, on the other extreme, the school district enacts policies specifically intended to prevent students from accessing accommodations and specifically with the goal of excluding those students, there is no doubt that plaintiffs would be permitted to pursue compensatory damages. *Paley*, 81 F.4th at 450.

The distance between these two lines, if any, has not been measured by the Fifth Circuit. *See Miraglia*, 901 F.3d at 574-75 (acknowledging without evaluating a party's argument that "intent" requires only "purposeful action" and that there is "some distance between" intent and "discriminatory animus"). Nevertheless, it seems likely that conduct might be both intentional and discriminatory without being driven by discriminatory motive or malicious animus. *See Paley*, 81 F.4th at 450 ("Of course, this standard is met under circumstances revealing a discriminatory motive.") (*quoting Wilson v. City of Southlake*, 2022 WL 17604575, at *6 (5th Cir. Dec. 13, 2022) (per curiam), which continues, "*Otherwise*, Fifth Circuit cases discussing the issue have required something more than deliberate indifference." (emphasis added, internal quotes omitted)).

Here, Plaintiffs have alleged that: AISD knew, in accordance with the seizure action plan, that a reasonable accommodation was necessary if J.M. were not to be excluded by his disability, (ECF 20 at 7); that AISD took certain steps toward providing that accommodation, such as keeping J.M.'s emergency medication on-site at his school, (*id.*); that, on the occasion in question, AISD intentionally refused to administer that emergency medication, resulting in J.M.'s death, (*id.*); and finally, that AISD chose not to implement policies, procedures, and practices that might have led

---

[4] Other circuits, by contrast, equate intentionality and deliberate indifference. *See, e.g.*, *S.H. ex rel. Durell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013).

9

to a different result, (*id.* at 4). Together, these allegations state a plausible case that AISD engaged in intentional, discriminatory behavior in violation of the ADA and the Rehabilitation Act.

The Court does not hesitate in the slightest to presume that every single individual involved in the events underlying this lawsuit wanted J.M. to live. Plaintiffs have not alleged, and the Court does not imagine, that AISD or any of its employees was motivated by a desire for bad events to transpire because of J.M.'s disability. And it may be that, after some discovery, the weight of the evidence is such that no reasonable jury could find that J.M.'s unfortunate death was the result of intentionally discriminatory acts or omissions on the part of AISD. But that is not the standard at this stage in the litigation. Plaintiffs have stated a claim for relief that is plausible on its face, and their lawsuit cannot be dismissed pursuant to Rule 12(b)(6).

## VI.   CONCLUSION

For the foregoing reasons, AISD's Motion to Dismiss Plaintiffs' First Amended Complaint, (ECF 26), is DENIED.

IT IS SO ORDERED.

ENTERED April 29, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE