IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| APRYL DAWN MENDOZA and | § | |
| GABRIEL ERIC MENDOZA, as Co- | § | |
| Independent Administrators of the | § | |
| ESTATE OF JAXSON MENDOZA, | § | |
| Deceased, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 2:24-cv-00169-BR |
| | § | |
| v. | § | |
| | § | |
| AMARILLO INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT AMARILLO INDEPENDENT SCHOOL DISTRICT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Meredith Prykryl Walker
WALSH GALLEGOS KYLE
ROBINSON & DE LOS SANTOS P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com

Andrea Slater Gulley
WALSH GALLEGOS KYLE
ROBINSON & DE LOS SANTOS P.C.
6900 W Interstate 40, Suite 195
Amarillo, Texas 79106
806.310.7150
806.223.1256 (facsimile)
agulley@wabsa.com

D. Craig Wood
WALSH GALLEGOS KYLE
ROBINSON & DE LOS SANTOS P.C.
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
210.979.6633
210.979.7024 (facsimile)
cwood@wabsa.com

ATTORNEYS FOR DEFENDANT
AMARILLO INDEPENDENT
SCHOOL DISTRICT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF MATERIAL FACTS ........................................................... 1

III.  SUMMARY JUDGMENT STANDARD ........................................................... 4

IV.   ARGUMENTS AND AUTHORITIES .............................................................. 6

    A.  Section 504 of the Rehabilitation Act and the Americans
        with Disabilities Act do not provide a remedy for what
        amounts to a medical malpractice claim ............................................. 6

    B.  The Court evaluates Plaintiff's disability discrimination
        claims using the same standard ........................................................... 8

    C.  Plaintiff cannot establish a failure to accommodate
        claim under Section 504 of the Rehabilitation Act or
        the Americans with Disabilities Act ................................................... 8

    D.  Plaintiff cannot establish the intentional discrimination
        necessary to recover monetary damages under Section 504 of
        the Rehabilitation Act and the Americans with Disabilities Act ................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*,
   605 U.S. 335 (2025) ................................................................................ 10

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*,
   699 F.3d 832 (5th Cir. 2012) .................................................................. 5

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................ 5, 6

*Brown v. City of Houston*,
   337 F.3d 539 (5th Cir. 2003) .................................................................. 5

*Cadena v. El Paso Cnty.*,
   946 F.3d 717 (5th Cir. 2020) .................................................................. 8

*Celotex Corp v. Catrett*,
   477 U.S. 317 (1986) ....................................................................... 4, 5, 6

*Chupka v. Pflugerville Indep. Sch. Dist.*, No. 21-50356,
   2022 WL 1056101 (5th Cir. Apr. 8, 2022) ........................................... 10

*D.A. v. Houston Indep. Sch. Dist.*,
   629 F.3d 450 (5th Cir. 2010) .................................................................. 8

*Delano-Pyle v. Victoria County, Tex.*,
   302 F.3d 567 (5th Cir. 2002) ................................................................ 10

*Diamond Offshore Co. v. A&B Builders, Inc.*,
   302 F.3d 531 (5th Cir. 2002) .................................................................. 5

*Eason v. Thaler*,
   73 F.3d 1322, 1325 (5th Cir. 1996) ....................................................... 6

*Forsyth v. Barr*,
   19 F.3d 1527, 1537 (5th Cir. 1991) ....................................................... 6

*Grand Isle Shipyard Inc. v. Seacor Marine, LLC*,
   589 F.3d 778 (5th Cir. 2009) .................................................................. 5

*Hainze v. Richards*,
   207 F.3d 795 (5th Cir. 2000) .................................................................. 8

*Jenkins v. Methodist Hosps. of Dallas,*
    478 F.3d 255, 260 (5th Cir. 2007)................................................. 5

*Johnston v. City of Houston,*
    14 F.3d 1056, 1060 (5th Cir.1994).............................................. 5

*Kahlil v. City of New York*, No. 24-cv-4823,
    2025 WL 3628485 (E.D.N.Y. Dec. 15, 2025) ........................... 7

*King v. Dogan,*
    31 F.3d 344, 346 (5th Cir.1994).................................................. 5

*Larry v. White,*
    929 F.2d 206, 211 n. 12 (5th Cir.1991)...................................... 5

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994)....................................................... 6

*McGugan v. Aldana-Bernier*,
    752 F.3d 224 (2d Cir. 2014)........................................................ 7

*Salinas v. Collier*, No. 24-10802,
    2025 WL 1218185 (5th Cir. Apr. 28, 2025) ............................. 10

*Scott v. Harris*,
    550 U.S. 372, 380 (2007). ...................................................... 5, 6

*Skotak v. Tenneco Resins*, Inc.,
    953 F.2d 909, 915, n.7 (5th Cir. 1992),...................................... 6

*Smith v. Harris County, Tex.*,
    956 F.3d 311 (5th Cir. 2020)................................................. 9, 10

*Whetstone v. Hall*, No. 4:17-cv-158,
    2018 WL 1022586 (N.D. Miss. Feb. 22, 2018) ...................... 6, 7

*Wilson v. City of Southlake*, No. 21-10771,
    2022 WL 17604575 (5th Cir. Dec. 13, 2022) ........................... 10

## STATUTES, REGULATIONS, AND RULES

42 U.S.C. § 12132................................................................................. 8

FED. R. CIV. P. 56(c) ............................................................................ 5

TEX. EDUC. CODE § 38.033 ................................................................. 4

### <u>DEFENDANT AMARILLO INDEPENDENT SCHOOL DISTRICT'S BRIEF IN<br>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Defendant Amarillo Independent School District (Amarillo ISD or the District) submits this Brief in support of its Motion for Summary Judgment in accordance with Federal Rule of Civil Procedure 56 and Local Rules 56.3 and 56.5 and, in support thereof, respectfully would show the Court as follows:

### I.     <u>INTRODUCTION</u>

Jaxson Mendoza (Jaxson) tragically passed away on August 25, 2022. While Jaxson's family is understandably still grieving from his loss, Jaxson's passing does not give rise to viable claims under Section 504 of the Rehabilitation Act (Section 504) or the Americans with Disabilities Act (ADA). At most, what happened on August 24, 2022, constitutes medical malpractice.[1] More importantly, the evidence before the Court does not reflect that the District knew the consequential limitations of Jaxson's disability as those limitations presented themselves on August 24, 2022, and, regardless, Amarillo ISD did not engage in intentional discrimination. As the Court already noted, there is no "hesitat[ion] in the slightest to presume that every single individual involved in the events underlying this lawsuit wanted [Jaxson] to live." (Dkt. 36, p.10). Plaintiff certainly cannot produce any evidence to the contrary. While the worst outcome came to pass, the worst outcome simply does not equate to liability. The Court should dismiss Plaintiff's claims accordingly.

### II.     <u>STATEMENT OF MATERIAL FACTS</u>

1.     During the 2022-2023 school year, Jaxson Mendoza was an incoming Freshman at Amarillo High School in Amarillo ISD. (Def. App. 31). According to his parents, Jaxon received

---

[1] Amarillo ISD adamantly denies that the District or any of its employees acted negligently in connection with the events on August 24, 2022.

an epilepsy diagnosis in 2019. (Def. App. 31). Jaxson's 2022-2023 Amarillo ISD Student/Athlete

Emergency Information Card reflects Jaxson's doctor prescribed him Onfi 10mg twice a day,

Vimpat 200mg twice a day, and Lamictal 150mg twice a day. (Def. App. 31). Jaxson's parents

also stated he would "have rescue nasal spray." (Def. App. 31). Jaxson's physician cleared him to

play sports during the 2022-2023 school year. (Def. App. 37-38).

      2.     Cook Children's completed a Seizure Action Plan for Jaxson on July 7, 2022. (Def.

App. 28-29). The Seizure Action Plan, which was on file with the District, specifically provided

that his emergency seizure medication was to be administered as follows:

| Emergency Medications | | | |
|---|---|---|---|
| Medication | Dose | Admin Instructions | Possible Side Effects |
| Nasal Midazolam | 5 mg | Spray in 1 nostril for any seizure greater than 5 minutes | Drowsy |

(Def. App. 29). District Policy FFAC (Legal) addressed Seizure Action Plans. (Def. App. 4-9).

      3.     On August 24, 2022, Jaxson was on the track at Amarillo High School. (Def. App.

25). He completed a run on the track at approximately 12:03:41 p.m. (Def. App. 25). At

approximately 12:08:10 p.m. (*i.e.*, four and half minutes later), Amarillo High School Nurses

Angela Martinez and Rachel Martin arrived at the track. (Def. App. 19, 25). At 12:11 p.m., Nurse

Martin contacted Jaxson's mother, Apryl Mendoza. (Def. App. 19).

      4.     Ms. Mendoza testified as follows regarding her conversation with Nurse Martin on

August 24, 2022:

> Q.     So tell me how you first learned of this situation at Amarillo High School.
>
> A.     I received a phone call from Rachel that said, "Apryl, Jaxson is having a seizure on the field."
>
> Q.     What else did she say to you during that conversation?
>
> A.     I said, "Okay. Let me call Gabe." And she said, "We're calling an ambulance." And I heard someone in the background, which I think was the

liaison officer, said, "They're on their way." And I said, "I'm sending
Gabe."

Q.      And some of the information I reviewed indicated that you told them that
you did not want Jaxson transported by ambulance. Is that accurate?

A.      I said – she said, "I'm calling an ambulance." And I said, "You don't have
to. I'll send Gabe." The liaison officer said, "They're on their way." And I
said, "Okay. I'm sending Gabe."

(Def. App. 48-49).

5.      According to Nurse Martin, Jaxson "was having tonic clonic seizures that started

at approximately 12:08PM and he continued to have cluster seizures lasting anywhere from 10-31

seconds with 10-45 second breaks in between." (Def. App. 19). Jaxson, however, had never had

cluster seizures prior to August 24, 2022. (Def. App. 50-51).

6.      Jaxson's Seizure Action Plan did not address cluster or extended seizures. (Def.

App. 29). Dr. Dave Shahani, Jaxson's treating physician, explained why:

Q.      Why would you not write in the seizure action plan that it's to be
administered any time a patient experiences a seizure?

A.      Because the vast majority of times, the seizure will resolve spontaneously
as it did for Jaxson prior to this event. All of his seizures resolved
spontaneously in less than a minute, minute and a half. So most of the time,
you don't need additional medications.

Q.      And you're aware that Jaxson's parents never found it necessary to
administer the medication, are you not?

A.      Correct, because he never had a prolonged seizure before.

(Def. App. 63-64).

7.      The ambulance arrived at the Amarillo High School track at 12:17:56, less than 20

minutes after Jaxson completed his run. (Def. App. 19, 25, 26). Jaxson tragically passed away on

August 25, 2022, at the age of 14. (Dkt. 20, ¶17). Because Jaxson did not have a seizure lasting

longer than five minutes on August 24, 2022, Nurse Martin did not administer Jaxson's emergency

seizure medication. (Def. App. 29, 67-68).

8.    All medical personnel attending to Jaxson on August 24, 2022, as well as other District personnel, completed Seizure Awareness Training prior to the incident in accordance with the Texas Education Code:[2]

Assistant Principal Tammy Nash – July 14, 2022

Nurse Angela Martinez – August 11, 2022

Nurse Rachel Martin – August 15, 2022

Trainer Joshua Bowles – August 2, 2022

Assistant Principal Austin Price – July 20, 2022

Trainer Jenna Phillips – August 2, 2022

Coach Benjamin Hausen – August 9, 2022

Coach Jason Pillion – August 9, 2022

(Def. App. 11-18, 27). In addition, Nurse Martin completed Seizure Training for Managing Students with Seizures: The Importance of School Nurses through the Epilepsy Foundation on December 18, 2019, which is required by the Texas Education Code.[3] (Def. App. 10).

### III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial.[4] Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the

---

[2] *See* TEX. EDUC. CODE § 38.033.
[3] *See id.*
[4] *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).

4

movant is entitled to judgment as a matter of law.[5] The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact.[6] If the moving party meets its burden, the non-moving party must present specific facts that establish the existence of a genuine issue of material fact and articulate the precise manner in which that evidence supports his claims.[7]

No genuine issue of material fact exists if the summary judgment evidence is such that no reasonable juror could find in favor of the nonmovant.[8] Thus, when opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, the Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.[9] The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's unverified pleadings.[10] Moreover, if the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.[11] Likewise, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."[12]

The "mere existence of some alleged factual dispute between the parties will not defeat an

---

[5] FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 323-25; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[6] *Celotex*, 477 U.S. at 323.. at 323.

[7] *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012); *Ragas*, 136 F.3d at 458.

[8] *Jenkins v. Methodist Hosps. of Dallas*, 478 F.3d 255, 260 (5th Cir. 2007).

[9] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[10] *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 544 n. 13 (5th Cir. 2002), *overruled in part on other grounds by Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). *See, e.g., King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (holding that unverified pleadings do not constitute proper summary judgment evidence); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.1994) (holding that unsworn pleadings do not constitute proper summary judgment evidence); *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir.1991) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

[12] *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

otherwise properly supported motion for summary judgment."[13] Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and will not defeat a summary judgment motion.[14] The nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.[15] In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts.[16] Rule 56 does not require the Court to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary judgment motion.[17] If the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, the Court must grant summary judgment.[18]

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Section 504 of the Rehabilitation Act and the Americans with Disabilities Act do not provide a remedy for what amounts to a medical malpractice claim.

"The ADA and [Section 504] exist to protect individuals from being discriminated against because they have disabilities; they do not exist to challenge a person's treatment for a disability."[19] But that is exactly how Plaintiff has couched its claims against Amarillo ISD. Indeed, the District did not refuse to accommodate Jaxson's seizure disorder, after all, he had a Seizure Action Plan on file with the District. (Def. App. 28-29). Instead, Plaintiff complains about the medical treatment Jaxson received from Nurse Martin to treat his seizures on August 24, 2022. Neither Section 504 nor the ADA, however, contemplate a claim for "the mere absence or inadequacy of

---

[13] *Scott*, 550 U.S. at 380.

[14] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

[15] *Anderson*, 477 U.S. at 249.

[16] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[17] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1991) (quoting *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915, n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832, 113 S. Ct. 98 (1992)).

[18] *Celotex*, 477 U.S. at 322-23.

[19] *Whetstone v. Hall*, No. 4:17-cv-158, 2018 WL 1022586, at *2 (N.D. Miss. Feb. 22, 2018).

6

medical treatment."[20]

Moreover, while not binding on this Court, the Second Circuit provides guidance on distinguishing between a violation of the ADA and Section 504 and a state law medical malpractice claim, which is relevant to the facts before the Court:

> The Second Circuit has recognized the importance of distinguishing between "positive" discrimination, which involves "drawing distinctions that are relevant to the qualities or characteristics of the thing observed," and "negative or pejorative" discrimination, which involves "withholding advantages or inflicting disadvantages on the basis of irrelevant criteria, under the influence of irrational bias," in the context of medical treatment. As the Second Circuit explained:
>
> > Since disability is so often associated with a medical condition, the distinction . . . is critical to prevent the federal statutes from displacing the state law causes of action for malpractice. The federal law of discrimination does not review the conduct of "[a] doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate)[.]" If the treatment is merely deficient, imprudent, or harmful, the matter is one of medical malpractice.
>
> Thus, "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act [only] if [ ]he alleges that the defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of' the inquiry in question."[21]

In applying this standard to the facts before it, the *Kahlil* court found that "whether to administer glaucoma medication or antipsychotic drugs clearly constituted medical decisions," which did not support claims under Section 504 and the ADA.[22]

The same analysis applies equally here. Nurse Martin made a medical decision based on her professional judgment, training, and Jaxson's Seizure Action Plan to not administer his

---

[20] *Id.* While *Whetstone* addresses Section 504 and the ADA in the context of prison, that distinction does not alter the application of the general principle set forth in the district court's decision as the issue at the center of Plaintiff's claims is the failure to administer a medication (*i.e.*, inadequate medical treatment).

[21] *Kahlil v. City of New York*, No. 24-cv-4823, 2025 WL 3628485, at *8 (E.D.N.Y. Dec. 15, 2025) (internal citations omitted).

[22] *Id.* (noting that "'[e]ven if this decision-making was faulty or constituted malpractice, it cannot support a claim under the [Rehabilitation Act] or ADA.'") (quoting *McGugan v. Aldana-Bernier*, 752 F.3d 224, 234 (2d Cir. 2014)).

emergency seizure medication on August 24, 2022. Nurse Martin's decision was, at most, negligent.[23] But the ADA and Section 504 do not provide a remedy for negligent medical treatment.[24] The Court should dismiss Plaintiff's Section 504 and ADA claims accordingly, thereby ensuring that the ADA and Section 504 are not transformed into federal medical malpractice statutes.

**B.    The Court evaluates Plaintiff's disability discrimination claims using the same standard.**

Section 504 of the Rehabilitation Act (Section 504) provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[25] Similarly, the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[26] Because the Fifth Circuit equates the same liability standards under the Section 504 and the ADA, Amarillo ISD addresses Plaintiff's Section 504 and ADA claims together.[27]

**C.    Plaintiff cannot establish a failure to accommodate claim under Section 504 of the Rehabilitation Act or the Americans with Disabilities Act.**

Plaintiff alleges the District discriminated against Jaxson on the basis of his disability in violation of Section 504 and the ADA by refusing to administer his emergency seizure medication,

---

[23] Amarillo ISD strongly disputes that Nurse Martin was negligent given the language in Jaxson's Seizure Action Plan. (Def. App. 29).
[24] *See Cadena v. El Paso Cnty.*, 946 F.3d 717, 726 (5th Cir. 2020).
[25] 29 U.S.C. § 794(a).
[26] 42 U.S.C. § 12132.
[27] *See D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) ("Because this court has equated liability standards under § 504 and the ADA, we evaluate D.A.'s claims under the statutes together."); *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) ("Jurisprudence interpreting either section [the ADA or the RA] is applicable to both.").

midazolam. (Dkt. 20, ¶¶24, 32). To prevail on this claim, Plaintiff must plead factual allegations reflecting (1) Jaxson was a qualified individual with a disability; (2) his disability and its consequential limitations were known by the District; and (3) Amarillo ISD failed to make reasonable accommodations.[28] Even assuming *arguendo* that Plaintiff's factual allegations support a valid failure to accommodate claim (as opposed to being a negligent medical malpractice claim posing as a failure to accommodate), the evidence before the Court does not support any inference that the District failed to implement Jaxson's accommodations related to his seizures.

Indeed, as set forth above, Jaxson's seizure action plan explicitly states District personnel was to administer Jaxson's emergency seizure medication "for any seizure greater than 5 minutes." (Def. App. 29). But Jaxson did not have a seizure that lasted longer than five minutes on August 24, 2022; rather, Jaxson had cluster seizures, which lasted 10 to 31 second each with breaks in between. (Def. App. 19). Jaxson's treating physician acknowledged during his deposition that the Seizure Action Plan did not address administering Jaxson's emergency seizure medication for cluster/extended seizures because Jaxson had never had those types of seizures. (Def. App. 63-64).

It is axiomatic that Amarillo ISD could not know the "consequential limitations" of Jaxson's epilepsy on August 24, 2022, when he had never had the type of cluster/extended seizures that presented on that day. (Def. App. 50-51, 63-64). And without instructions in Jaxson's Seizure Action Plan addressing cluster/extended seizures, the District could not know that it needed to administer Jaxson's emergency seizure medication, which would have directly contravened the directives contained therein. (Def. App. 29). It follows that Plaintiff cannot establish Amarillo ISD discriminated against Jaxson in violation of Section 504 and the ADA by failing to administer his emergency seizure medication. The Court should dismiss Plaintiff's claims accordingly.

---

[28] *Smith v. Harris County, Tex.*, 956 F.3d 311, 317 (5th Cir. 2020).

**D.    Plaintiff cannot establish the intentional discrimination necessary to recover monetary damages under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.**

Even assuming *arguendo* that Plaintiff can establish Amarillo ISD failed to accommodate Jaxson's disability August 24, 2022, the District is still entitled to summary judgment as Plaintiff cannot establish the intentional discrimination necessary to recover monetary damages under Section 504 and the ADA. To that end, "[e]ven when plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they 'may only recover compensatory damages upon a showing of intentional discrimination.'"[29] Negligence will not suffice to support such a finding.[30] Indeed, to make this showing, Plaintiff must show Amarillo ISD acted with something more than deliberate indifference.[31] Here, Plaintiff cannot even establish deliberate indifference.

"[T]o show deliberate indifference, it is enough that a plaintiff prove the defendant disregarded a 'strong likelihood' that the challenged action would 'result in a violation of federally protected rights.'"[32] The evidence before the Court does not support this conclusion; instead, the evidence shows that (1) District staff was appropriately trained; (2) Amarillo ISD had a policy relating to Seizure Action Plans; (3) Jaxson had never experienced cluster/extended seizures; (4) Jaxson's Seizure Action Plan did not address cluster/extended seizures; and (5) Nurse Martin followed Jaxson's Seizure Action Plan as written. (Def. App. 8, 10-19, 29, 50-51, 63-64). At most, Nurse Martin acted with negligence on August 24, 2022, which will not suffice to support Plaintiff's Section 504 and ADA claims. The Court should dismiss Plaintiff's claims accordingly.

WHEREFORE, PREMISES CONSIDERED, Amarillo ISD respectfully requests that the

[29] *Id.* at 318 (quoting *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)).
[30] *Chupka v. Pflugerville Indep. Sch. Dist.*, No. 21-50356, 2022 WL 1056101, at *2 (5th Cir. Apr. 8, 2022) ("A plaintiff seeking compensatory damages must show intentional discrimination to prevail on an ADA claim, as negligence is insufficient. We require something more than deliberate indifference.") (internal citations omitted).
[31] *Salinas v. Collier*, No. 24-10802, 2025 WL 1218185, at *1 (5th Cir. Apr. 28, 2025); *Wilson v. City of Southlake*, No. 21-10771, 2022 WL 17604575, at *6 (5th Cir. Dec. 13, 2022).
[32] *A.J.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025).

10

Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims, and award the District

its costs, including attorney's fees incurred herein. Amarillo ISD requests such other and further

relief to which it may show itself justly entitled.

Respectfully submitted,

By: ___/s/ Meredith Prykryl Walker___
         Meredith Prykryl Walker
         State Bar No. 24056487
         Andrea Slater Gulley
         State Bar No. 24045994
         D. Craig Wood
         State Bar No. 21888700

Meredith Prykryl Walker
WALSH GALLEGOS KYLE
ROBINSON & DE LOS SANTOS P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
214.574.8800
214.574.8801 (facsimile)
mwalker@wabsa.com

Andrea Slater Gulley
WALSH GALLEGOS KYLE
ROBINSON & DE LOS SANTOS P.C.
6900 W Interstate 40, Suite 195
Amarillo, Texas 79106
806.310.7150
806.223.1256 (facsimile)
agulley@wabsa.com

D. Craig Wood
WALSH GALLEGOS KYLE
ROBINSON & DE LOS SANTOS P.C.
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
210.979.6633
210.979.7024 (facsimile)
cwood@wabsa.com

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

On January 9, 2026, I electronically submitted the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

> Kevin A. Isern
> LOVELL, ISERN & FARABOUGH, LLP
> 112 SW 8th Avenue, Suite 1000
> Amarillo, Texas 79101

> /s/ Meredith Prykryl Walker
> Meredith Prykryl Walker