IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| APRYL DAWN MENDOZA *and* | § | |
| GABRIEL ERIC MENDOZA, *as* | § | |
| *Co-Independent Administrators of the* | § | |
| *Estate of J.M., Deceased*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:24-cv-169-BR |
| | § | |
| AMARILLO INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE EXPERT OPINIONS**

In this disability discrimination case, Plaintiffs seek to recover for injuries allegedly resulting from the prolonged seizure of fourteen-year-old J.M. while he was at school, and who later died as a result. Defendant is the school district where the alleged events took place.

Now before the Court are three motions by Defendant, each of which moves the Court to exclude the testimony of an expert witness retained by Plaintiffs. (ECF 48, 50, 52). Having considered the parties' filings and the applicable law, for the following reasons, Defendant's motions are GRANTED in part and DENIED in part.

## I.    FACTUAL BACKGROUND[1]

J. M. was diagnosed with epilepsy in sixth grade. (ECF 20 at 3). His condition was treated with multiple medications, but he continued to have breakthrough seizures. (*Id.*). Sam's Law (HB 684) requires all Texas public school personnel to be trained in the recognition of seizures and

---

[1] These factual allegations are taken from Plaintiffs' Amended Complaint (ECF 20) and are used for context only.

providing seizure first aid. J. M. had a seizure action plan on file with the school for management of his breakthrough seizures, which required different responses depending on the length of the seizure. (*Id.* at 3–4). This action plan required that, if any seizure lasted longer than five minutes, J. M. should be given five milligrams of nasal midazolam, and that if the seizure continued for another minute after that, emergency services and should be contacted. (*Id.* at 15).

On August 24, 2022, J. M. had a seizure while running on the school's track. (*Id.* at 4). The school called his mother Apryl Mendoza to notify her that J. M. was seizing and that emergency medical services were in route. (*Id.* at 5). Apryl called Gabriel Mendoza, and when he arrived at the scene, J. M. had been seizing for approximately seventeen minutes and had not received his prescribed dose of nasal midazolam. (*Id.*). Emergency medical personnel arrived and began performing CPR on J. M. before transporting him to the hospital. (*Id.*). He died the following day at the age of fourteen. (*Id.*).

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiffs alleged violations of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)) and the Americans with Disabilities Act (42 U.S.C. § 1210 et seq). Defendant moved to exclude three of Plaintiffs' experts—Dr. Dave Shahani, Ms. Monica Porras, and Dr. Francis Sheboy—on January 9, 2026. (ECF 48, 50, *and* 52). Plaintiffs responded to all three motions on January 30, 2026. Defendant replied on February 13, 2026.

## III.   <u>APPLICABLE LAW</u>

Generally, witnesses in federal cases are only permitted to testify on matters of which they have personal knowledge. FED. R. EVID. 602. Such testimony can take the form of an opinion, but most of the time, among other restrictions, the opinion must not be "based on scientific, technical

or other specialized knowledge[.]" *Id.* at 701(c). To offer an opinion[2] based on specialized knowledge—an "expert opinion"—certain standards must be met.

Those standards can be summarized under three headings: qualifications, relevance, and reliability. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997). The first requires that the witness must be "qualified as an expert by knowledge, skill, experience, training, or education[.]" FED R. EVID. 702. Second, the trial court must find it "more likely than not that the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" *Id.* at 702(a). Finally, the expert opinion must be "based on sufficient facts or data; . . . [be] the product of reliable principles and methods; and . . . [must reflect] a reliable application of the principles and methods to the facts of the case." *Id.* at 702(b)–(d). The proponent of the evidence bears the burden of proof on all three matters. *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018) (Horan, J.).

### A.    Expert Witness Qualifications

Qualification is a threshold inquiry; a witness must be qualified as an expert to offer an expert opinion. FED. R. EVID. 702. The degree or magnitude of an expert's qualifications, however, will not bear on the admissibility of their opinions. *Williams v. Monitowoc Cranes, LLC*, 898 F.3d 607, 623–624 (5th Cir. 2018) ("Although an expert's qualifications may be less-than-sterling, she may still be certified.").

### B.    Expert Testimony Relevancy

Like all evidence, an expert opinion must be relevant to be admissible. FED. R. EVID. 402; *see also id.* at 401 (defining "relevant" in this sense as "ha[ving] any tendency to make a [material]

---

[2] These rules also apply to factual testimony based on specialized knowledge—they are not restricted to opinions or conclusions. *See* FED. R. EVID. 702 ("A witness who is qualified as an expert . . . may testify in the form of an opinion *or otherwise*[.]") (emphasis added). The Court refers to all testimony based on scientific, technical, or other specialized knowledge as "expert opinion" in the interest of simplicity.

fact more or less probable than it would be without the evidence."). However, the expertise that justifies an expert going beyond their personal knowledge must also be relevant. *Id.* at 702(a) ("[T]he expert's scientific, technical, or other specialized knowledge [must] help the trier of fact."). In other words, the reasoning or methodology supporting the expert opinion must be the type that can be properly applied to the facts in issue. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).

### C.    Expert Testimony Reliability

Finally, an expert opinion is only admissible if it is reliable. The Rules break reliability into three inquiries: sufficiency of the underlying data, reliability of the principles and methods, and reliable application of those principles and methods. FED. R. EVID. 702(b)–(d). Together, these "assess[ ] whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight*, 482 F.3d at 352 (internal quotation marks omitted). "[C]ourts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation and internal quotation marks omitted).

### D.    The Court's Role

The landmark Supreme Court decision on expert witnesses is *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Applying an earlier version of the applicable rules, which have since been amended in part to adopt the principles of *Daubert* and its progeny, the Supreme Court emphasized the role of the trial judge in screening out irrelevant and unreliable testimony and

evidence. *Id.* at 589; *accord* FED. R. EVID. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible.").

The Fifth Circuit has emphasized that this role cannot be abdicated by admitting opinions that lack a sufficient basis in facts or data, or that fail to reliably apply appropriate methods, pursuant to a mere "glance at the expert's credentials[.]" *Harris v. FedEx Corp. Servs.*, 92 F.4th 286, 303 (5th Cir. 2024) (quoting *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)). Nevertheless, the inquiry demanded of the trial court is a "flexible" one, and the court has "broad discretion" in performing it. *Daubert*, 509 U.S. at 594, *and Harris*, 92 F.4th at 303–04 (quoting *Adams v. Mem'l Hermann*, 973 F.3d 343, 352 (5th Cir. 2020)).

The burden is on the proponent of expert witness testimony to establish by a preponderance of the evidence that the testimony is admissible. *See Daubert*, 509 U.S. at 592 n.10. Importantly, the question of admissibility is not about whether the testimony is correct or true. That is a matter reserved for the factfinder at trial. *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) *and Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As such, questions of the weight carried by an expert opinion, or the relative degree of expertise possessed by a qualified witness, are not determinative when deciding the admissibility of an expert opinion. *See, e.g.*, *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1044–45 (N.D. Tex. 2022) (citing *Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009)).

Moreover, "the rejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *United States v. 14.38 Acres of Land, More or*

*Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). The adversary system thus still acts as the ultimate arbiter of truth. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

E.    <u>Ultimate Legal Conclusions</u>

While an expert opinion "is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), experts are not permitted to offer legal conclusions in their testimony. *See Estate of Sowell v. United States*, 198 F.3d 169, 171–172 (5th Cir. 1999); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). *Douglas v. Potter Cnty., Texas*, No. 2:24-CV-030-Z-BR, 2025 WL 824582 at *3 (N.D. Tex. Mar. 13, 2025) (holding that expert could not testify as to whether Defendant was deliberately indifferent or violated the Constitution).

The relevance inquiry of the *Daubert* analysis requires the trial court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "[A]llowing an expert to give his opinion on the legal issues to be drawn from the evidence both invades the court's providence and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 811 (N.D. Tex. 2013) ("Both opinions attribute legal significance to certain facts, which is not helpful to the trier of fact and must be excluded under Rule 702.").

**IV.    <u>THE MOTIONS TO EXCLUDE</u>**

As noted above, there are three pending motions to exclude expert witnesses in this case. (ECF 48, 50, *and* 52). Defendant filed all three moves to exclude Plaintiffs' retained experts Dr. Dave Shahani (ECF 48), Ms. Monica Porras (ECF 50), and Dr. Francis Sheboy (ECF 52).

Defendant asserts the same central argument for each expert that it moves to exclude, so the Court will address them in tandem. Defendant argues that the expert testimonies of Dr. Shahani,

Monica Porras, and Dr. Sheboy are inadmissible under Federal Rules of Evidence 403 and 702, based on the assertion that each expert's testimony contains impermissible legal conclusions.

As stated above, Defendant is correct that an expert witness may not include legal conclusions in his or her testimony. *See Sowell*, 198 F.3d at 171–172; *Owen*, 698 F.2d at 240. Although Plaintiffs note that under Federal Rule of Evidence 704(a) "[a]n opinion is not objectionable just because it embraces an ultimate issue," the Fifth Circuit has clarified that "this rule does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996). Nor may experts "provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020). This is because "our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury." *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997). Further, legal opinions do not assist the trier of fact as required by Federal Rule of Evidence 702(a). *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (noting that an expert's legal conclusion "both invades the court's province and is irrelevant").

A.      Dr. Shahani

Defendant argues that Dr. Shahani's November 2025 expert report "transforms previously uncertain factual points into definitive assertions," and introduces "legal theories of 'intentional discrimination' and 'deliberate indifference'" that were not in his previous June 2024 report. (ECF 48 at 1). In the November 2025 report, Dr. Shahani states that he has been "made aware" of the legal definitions of "negligence" and "ordinary care" in regards to "the conduct of AISD nursing staff," and recites those standards. (*Id.* at 8). He also states that he had been "made aware" of the "intentional" definition under Section 504 and the ADA. (*Id.*) He goes on to conclude that "[a] knowing refusal to administer medication despite a clear seizure action plan and training constitutes intentional discrimination and deliberate indifference under Title II of the ADA" and that the AISD nurses "made a conscious choice to disregard" J. M.'s seizure action plan. (*Id.*).

Plaintiffs argue that Dr. Shahani's testimony is reliable, but their Response does little to rebut Defendant's arguments regarding the admissibility of legal conclusions. (*See* ECF 56).

The Court agrees with Defendant that these are legal conclusions and should be excluded as irrelevant and unhelpful to the trier of fact. It is well established that testimony stating a party acted with "deliberate indifference" or "conscious disregard" constitutes impermissible legal conclusions. *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("[A]n expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible."); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (holding that an expert witness's testimony regarding whether defendant's lack of concern constituted deliberate indifference or conscious disregard were inadmissible and did not aid the jury). Further, it is not the place of expert witnesses to describe legal terms such as "negligence," "ordinary care," or "intentional" to the jury. *See Arkanase*, 130 F.3d at 673. Therefore, Dr. Shahani will not be allowed to testify to these, and any other, legal conclusions.

Defendant also asserts that Dr. Shahani's discussion of Sam's Law, found in both the June 2024 and November 2025 reports, should be excluded because "[w]hether school personnel complied with statutory training requirements or internal policies is a legal and factual question for the Court and jury." (ECF 48 at 3). In the November 2025 report, Dr. Shahani describes the requirements of Sam's Law and states that, in his professional opinion, "[J. M.] was not treated per the standard of care outlined by Sam's Law and his seizure action plan." (ECF 49). Although, as explained above, it is not an expert's role to describe the law to the jury, an expert witness's testimony "should not be excluded simply because . . . the testimony will touch on legal topics." *Woodard v. Andrus*, No. 03-2098, 2009 U.S. Dist. LEXIS 6431, at *12-13 (W.D. La. 2009). "[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal

standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Id.* (citing *Burkhart v. Wash. Metro. Area Transit Auth.*, 324 U.S. App. D.C. 241, 112 F.3d 1207, 1212-13 (1997); *see also Sowell*, 198 F.3d at 172 (upholding a district court ruling to allow an expert to testify as to the general standards and conduct of a fiduciary, but forbidding him from testifying as to whether a fiduciary acted reasonably).

Dr. Shahani cannot testify as to whether AISD violated Sam's Law or describe the law's requirements to the jury because these are impermissible legal conclusions. Dr. Shahani may discuss Sam's Law in the context of his medical expertise, and may provide his opinion as to the facts of the case within that context. This includes how the law might relate to his testimony regarding the guidelines set out by the American Epilepsy Society or J. M.'s seizure action plan. (*See* ECF 49 at 7). However, Dr. Shahani cannot testify that "[J. M.] was not treated per the standard of care outlines by Sam's Law." (*Id.*).  First, because this is an impermissible legal conclusion, and second, because Defendant is correct that Sam's Law does not provide a standard of care, such testimony would confuse and mislead the jury. (*See* ECF 48 at 3).

### B.     Ms. Porras

Defendant also moves to exclude the testimony of Ms. Monica Porras, (ECF 50), arguing that Ms. Porras's testimony 'substitutes legal conclusions and advocacy for expert analysis" and would "improperly instruct the jury on the law." (*Id.* at 1). Ms. Porras's November 2, 2025 report includes testimony that a "knowing refusal to administer medication" constitutes "intentional discrimination or deliberate indifference under Title II of the ADA." (ECF 51). She then concludes that J. M. was "denied an ADA-protected accommodation" and "died as a result." (*Id.* at 6). Plaintiffs argue that experts are permitted to testify about "industry standards, compliance practices, and whether conduct is consistent with or departs from those standards—even when those standards are informed by statutory or regulatory framework," (ECF 56 at 6), and that "[h]er

use of terms commonly associated with disability law does not transform her opinions into impermissible legal conclusions." (*Id.* at 7).

Plaintiffs are correct that experts can opine as to industry standards and discuss whether conduct is consistent with those standards. *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1047-48 (N.D. Tex. 2022) (collecting cases) ("Qualified experts are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involves questions of fact rather than purely legal matters.") (citing *Waco Int'l, Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002)). This could include the discussion of statutes, such as the ADA and Section 504, in relation to how they relate to industry standards or practices, but cannot include legal conclusions relating to those statutes. *Am. Can!*, 595 F. Supp. 3d at 1047-48 (*citing Travelers Indem. Co. v. Royal Oak Enters., Inc.*, No. 5:02-cv-58-Oc-10GRJ, 2004 U.S. Dist. LEXIS 29575 at *9 (M.D. Fla. 2004) (holding that an expert may reference legal principles to provide context for their opinions on industry customs and practices, but cannot include legal conclusions in their testimony)).

Therefore, testimony that a "knowing refusal to administer medication" constitutes "intentional discrimination or deliberate indifference under Title II of the ADA," that J. M. was "denied an ADA-protected accommodation," or any similar legal conclusions relating to the ADA or Section 504 will be excluded. (ECF 51 at 8). But, testimony will not be excluded simply because it mentions Section 504 or the ADA within the context of Ms. Porras's discussion of industry customs or practices related to her experience as a school nurse.

### C.   Dr. Sheboy

Lastly, Defendant moves to exclude the testimony of Plaintiffs' expert Dr. Francis Sheboy because he "purports to offer opinions regarding Amarillo ISD's compliance with federal disability laws and its alleged deliberate indifference." (ECF 53). Defendant specifically takes issue with Dr.

the portion of Sheboy's May 2, 2025 report concluding that Amarillo ISD "violated Section 504 and the ADA" and "failed to comply with federal disability law." (*Id.* at 5, 59). Dr. Sheboy also opines in the report that Amarillo ISD acted with deliberate indifference, (*id.* at 2, 4, 6-9, 52-54, 59-60), all of which are legal conclusions. As stated above, experts cannot offer legal conclusions in their testimony. *See Sowell*, 198 F.3d at 171–172; *see also Sapp v. MHI P'ship, Ltd.*, 199 F. Supp. 2d 578, 589 (N.D. Tex. 2002) (excluding portions of an expert's testimony where it contained a legal opinion as to whether defendants violated the ADA). Any testimony by Dr. Sheboy containing legal conclusions, such as above, will be excluded. *See Salas*, 980 F.2d at 305.

Defendant also argues that Dr. Sheboy should not be able to opine as to J. M.'s disability status and eligibility under the ADA and Section 504 because he is not a medical doctor. (ECF 52 at 5-6). Plaintiffs argue that Dr. Sheboy has extensive experience in the realm of education administration, including oversight of staff responsible for identifying and providing accommodations for students with disabilities. (ECF 58 at 3). Although Dr. Sheboy may discuss J. M.'s condition within the context of his experience in education administration, statements that J. M.'s epilepsy and accompanying seizures "clearly constituted qualifying impairments that substantially limited major life activities" and "entitl[ed] him to protections under federal disability law" (ECF 52 at 8), and any similar statements, are legal conclusions that must be excluded. *See Equal Empl. Opportunity Comm'n v. Modern Group, Ltd.*, 725 F. Supp. 3d 577 (E.D. Tex. 2024) (holding that a plaintiff's declaration that he was "substantially limited in major life activities" was a legal conclusion and thus not competent summary judgment evidence).

## V.    CONCLUSION

The Court agrees with Defendant that portions of each challenged expert's testimony contain impermissible legal conclusions, are irrelevant, and risk confusing the jury. However, the Court also agrees with Plaintiffs that the appropriate remedy is limitation, not wholesale exclusion

of the witnesses—a remedy to which Defendant agrees. (*See* ECF 56, 57, 58, 62, 63, *and* 64). Therefore, Defendant's motions are GRANTED in so far as that Plaintiffs' experts will not be permitted to include any legal conclusions in their testimony, as explained above. This includes any testimony that states or applies Section 504 or ADA legal standards, or testimony that otherwise uses legal labels such as "deliberate indifference" or "intentional discrimination." Defendant's motions are DENIED to the extent that they ask the Court to exclude Plaintiffs' experts and their opinions in their entirety.

IT IS SO ORDERED.

ENTERED March 19, 2026.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE