IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

APRYL DAWN MENDOZA, *et al.*,

      Plaintiffs,

v.

                              2:24-CV-169-Z

AMARILLO INDEPENDENT
SCHOOL DISTRICT,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Amarillo Independent School District's ("AISD") Motion for Summary Judgment ("Motion"), filed January 9, 2026. ECF No. 45. Plaintiffs Apryl Dawn Mendoza and Gabriel Eric Mendoza, Co-Independent Administrators of the Estate of Jaxson Mendoza, responded on March 16, 2026. ECF No. 66. AISD replied on March 30, 2026. ECF No. 70. The Motion is now ripe. For the following reasons, the Court **DENIES** the Motion.

BACKGROUND

On August 25, 2022, Jaxson Mendoza[1] tragically passed away. ECF No. 46 at 5. He was fourteen years old. ECF No. 67 at 38. The day before, he endured an epileptic episode after "complet[ing] a run [on] the track at Amarillo High School," where he was an incoming freshman.[2] ECF No. 46 at 5–6.

Three years earlier, Jaxson was "diagnosed with epilepsy . . . while he was a student at AISD's Bonham Middle School campus." ECF No. 67 at 7. Jaxson's mother, Apryl Mendoza,

---

[1] Federal court filings generally may refer to minors only by their initials. FED. R. CIV. P. 5.2(a)(3). However, a party may "waive[] the protection of Rule 5.2(a)" by filing a minor's name "without redaction and not under seal." FED. R. CIV. P. 5.2(h). Plaintiffs have done that here. *See* ECF No. 67.

[2] Amarillo High School is one of six high schools operated by AISD. *See High Schools*, AMARILLO ISD, https://www.amaisd.org/146786_3 [https://perma.cc/E4RD-J2HD] (last visited June 24, 2026).

provided the nurse at Bonham Middle School with Nayzilam, a rescue medication for seizures, and both a Section 504 Plan and a Seizure Action Plan. *Id.* at 5, 7, 10; *see also* ECF No. 46 at 6 (describing Nayzilam as a "rescue nasal spray" for seizures). Section 504 plans derive their name from Section 504 of the Rehabilitation Act, which states that students with disabilities may not "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" by school districts "receiving Federal financial assistance." 29 U.S.C. § 794(a). AISD developed Jaxson's Seizure Action Plan pursuant to district policy. ECF No. 46 at 6. The Plan "required school personnel to administer [Nayzilam] in the event of a seizure lasting longer than five minutes." ECF No. 67 at 5; *see also* ECF No. 46 at 6 (noting that "[t]he Seizure Action Plan, which was on file with the District, specifically provided that his emergency seizure medication was to be administered" for "any seizure greater than 5 minutes").

Jaxson's seizure began "at approximately 12:03:41 p.m." on August 24, 2022. ECF No. 46 at 6. "At approximately 12:08:10 p.m. (*i.e.*, four and [a] half minutes later), Amarillo High School Nurses Angela Martinez and Rachel Martin[3] arrived at the track." *Id.* "At 12:11 p.m., Nurse Martin contacted Jaxson's mother, Apryl Mendoza." *Id.* District personnel called an ambulance around the same time they spoke with Jaxson's mother. *Compare id.* (implying that Nurse Martin called the ambulance), *with* ECF No. 67 at 18 (claiming that an AISD police officer did). "The ambulance arrived at the Amarillo High School track at 12:17:56," roughly fourteen minutes after Jaxson's epileptic episode began. ECF No. 46 at 6. During these fourteen minutes, Jaxson was lying on the ground. *Id.* at 6–7. Jaxson's father, Gabe,

---

[3] Ms. Martin was later disciplined by the Texas Board of Nursing for her actions. *See* ECF No. 67 at 19; *Notice of Disciplinary Action – 10/24*, TEX. BD. NURSING, https://www.bon.texas.gov/discipline_and_complaints_disciplinary_action_102024.asp.html [https://perma.cc/RK63-QJQW] (last visited June 25, 2026) (issuing Rachel Lea Martin a Reprimand with Stipulations on July 18, 2024).

arrived at the track three minutes later after receiving a call from Apryl—a total of seventeen minutes after the start of the epileptic episode. *See* ECF No. 67 at 19 ("Gabe looked at Jaxson and could tell he was seizing and not recovering from the seizure. . . . Gabe asked how long Jaxson had been down, and he was told 17 minutes.").

AISD staff did not administer Nayzilam to Jaxson during these seventeen minutes, "even though the rescue medication was on the ground sitting right beside Jaxson." ECF No. 67 at 19. AISD avers it needn't abide by the Seizure Action Plan because "Jaxson did not have a [*single*] seizure that lasted longer than five minutes on August 24, 2022." ECF No. 46 at 13. "[R]ather," AISD contends, Jaxson's seventeen-plus-minute epileptic episode consisted of "cluster seizures, which lasted 10 to 31 second[s] each with breaks in between." *Id.* Thus— according to AISD—the District cannot be liable for Jaxson's death because "without instructions in Jaxson's Seizure Action Plan addressing cluster/extended seizures, the District could not know that it needed to administer Jaxson's emergency seizure medication." *Id.* AISD then goes a step further, contending that providing Jaxson with Nayzilam during his epileptic episode "would have directly contravened the directives contained" in the Seizure Action Plan. *Id.*

Jaxson died the next day. His parents, Apryl and Gabe Mendoza, then sued AISD on August 9, 2024, alleging violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. ECF No. 1; *see also* ECF No. 20 (Amended Complaint filed October 4, 2024).

### LEGAL STANDARD

"[S]ummary judgment is warranted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 711 (5th Cir. 2002) (citing FED. R. CIV. P.

3

56(c)). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under the governing law," and disputes about a material fact are "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Brown v. City of Hou., Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003))). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (citing *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). While the moving party is not required to negate each element of the nonmoving party's case, it can meet its burden by demonstrating the "absence of facts supporting the elements" of the nonmoving party's causes of action. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986)).

"[E]ven in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be

4

to proceed to a full trial.'" *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 255); *see also id.* ("A district court 'has the discretion to deny a motion for summary judgment even if the movant otherwise successfully carries its burden of proof if the judge has doubt as to the wisdom of terminating the case before a full trial.'" (quoting *Veillon v. Exploration Servs.*, 876 F.2d 1197, 1200 (5th Cir. 1989) (citation modified))); *Kunin v. Feofanov*, 69 F.3d 59, 62 (5th Cir. 1995) (per curiam) ("[E]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment . . . ."); 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2728 (4th ed. 2025) (noting that "the court retains some discretion to deny a Rule 56 motion" even "in situations in which the moving party seems to have discharged its burden of demonstrating that no genuine issue of fact exists"). Thus, district courts have considerable discretion to deny motions for summary judgment when the court believes a trial would be preferable to adjudicating the parties' rights based on briefing alone.

ANALYSIS

**I.      Disability-Discrimination Claims Under Section 504 and the ADA**

The Fifth Circuit "has equated liability standards under [Section] 504 and the ADA." *D.A. ex rel. Latasha A. v. Hou. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)). It does so because "the language in the ADA generally tracks the language set forth in [Section] 504" and "the ADA expressly provides that 'the remedies, procedures, and rights' available under the Rehabilitation Act are also accessible under the ADA." *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (citation modified) (quoting 42 U.S.C. § 12133)); *see also Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("The language in the ADA generally tracks the language set forth in the [Rehabilitation Act]."). Thus, district courts may evaluate claims brought under these

two statutes together. *See D.A. ex rel. Latasha A.*, 629 F.3d at 453; *Hainze*, 207 F.3d at 799 ("Jurisprudence interpreting either section is applicable to both." (citation omitted)).

To assert a cause of action under either Section 504 of the Rehabilitation Act or the ADA, a plaintiff must prove:

> (1) he is a qualified individual; (2) who was excluded from participation in, or [is] being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) the exclusion, denial of benefits, or discrimination is because of the recognized disability.

*Huron v. Natalia Indep. Sch. Dist.*, No. SA-25-CV-230, 2025 WL 2252606, at *5 (W.D. Tex. Aug. 6, 2025) (citing *Paley*, 81 F.4th at 449). To establish causation, a plaintiff must show that his disability was "the sole reason for the exclusion or denial of benefits." *Id.* (citation omitted).

The core question in ADA/Section 504 cases involving schools "is whether the school district intentionally discriminated against a student by denying benefits due to the student's disability." *Huron*, 2025 WL 2252606, at *5; *see also Mendoza v. Amarillo Indep. Sch. Dist.*, No. 2:24-CV-169, 2025 WL 1239906, at *3 (N.D. Tex. Apr. 29, 2025) ("To recover damages under either Act, a plaintiff must show that a defendant's conduct was intentional."). Until last year, children suing their schools were required to make "a heightened showing of bad faith or gross misjudgment." *Huron*, 2025 WL 2252606, at *5. But after the Supreme Court's decision in *A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335 (2025), "ADA and Rehabilitation Act claims based on educational services [are] subject to the same standards that apply in other disability discrimination contexts." 605 U.S. at 345. Consequently, student–plaintiffs "must allege and show *only* intentional discrimination based solely upon the student's established and known disability, as is required in other discrimination cases outside the education context." *Huron*, 2025 WL 2252606, at *5

6

(emphasis added) (citing *A. J. T.*, 605 U.S. at 345).

## II. Failure to Accommodate and Intentional Discrimination

### A. Jaxson's Seizure Action Plan

AISD maintains that it did not violate Jaxson's Seizure Action Plan—and thus did not fail to accommodate his disability—because "without instructions in Jaxson's Seizure Action Plan addressing cluster/extended seizures, the District could not know that it needed to administer Jaxson's emergency seizure medication." ECF No. 46 at 13. AISD accordingly asks the Court to grant summary judgment.

To prove a failure-to-accommodate claim under either the ADA or Section 504, a plaintiff must show: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (quoting *Feist v. La. Dep't of Just.*, 740 F.3d 450, 452 (5th Cir. 2013)). AISD does not dispute that Jaxson "was a qualified individual with a disability." ECF No. 46 at 13. There is also no dispute that AISD was generally aware of Jaxson's epilepsy. Instead, AISD argues that it "could not know the 'consequential limitations' of Jaxson's epilepsy on August 24, 2022, when he had never had the type of cluster/extended seizures that presented on that day." *Id.* (quoting *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020)). It follows, according to AISD, that the Mendozas cannot establish that AISD "discriminated against Jaxson in violation of Section 504 and the ADA by failing to administer his emergency seizure medication." *Id.* AISD further contends that this means the Mendozas cannot show that it failed to accommodate Jaxson's disability in a way that is actionable under the ADA or Section 504. *Id.*

Because abiding by Jaxson's Seizure Action Plan would be prima facie evidence of making reasonable accommodations for his disability, a key question is whether AISD

violated the Plan when it failed to administer Jaxson's rescue medication. As AISD acknowledges, this requires asking whether Jaxson had "a seizure" longer than five minutes on August 24, 2022. *See* ECF No. 46 at 13. If he did not, as AISD contends, then AISD likely complied with the Seizure Action Plan. But if Jaxson *did* suffer "a seizure" lasting longer than five minutes, then AISD failed to accommodate Jaxson's disability by failing to administer his rescue medication for nearly twenty minutes. All that remains is for the Finder of Fact to ask whether this failure was intentional.

AISD cites no case law—and the Court is aware of none—holding that "a seizure" can only be defined as a single, continuous bout of abnormal electrical activity in the affected person's brain. AISD simply repeats *ad nauseam* that "Jaxson did not have a seizure that lasted longer than five minutes," insisting that he instead had a series of "cluster seizures" lasting "10 to 31 second[s] each with breaks in between." ECF No. 46 at 13; *see also* ECF No. 70 at 9 ("But the Seizure Action Plan did not call for the administration of Nasal Midazolam unless Jaxon had 'any seizure'—singular—lasting longer than five minutes. He did not experience such a seizure."). But Jaxson's Seizure Action Plan does not define "seizure" in this way. And AISD provides no support for its proposed definition of "seizure" beyond its own conclusory statements.

"Viewing the facts in the light most favorable to the [Mendozas] and drawing all reasonable inferences in their favor," it is a disputed question of fact whether the nearly twenty-minute epileptic episode Jaxson experienced on August 24, 2022 constitutes "a seizure" lasting longer than five minutes. *Deville*, 567 F.3d at 163–64 (citation modified). If the jury finds that it was, and that AISD accordingly failed to comply with Jaxson's Seizure Action Plan, the next question will be whether this failure was intentional.

   B.  *Intentional Discrimination After* A. J. T. v. Osseo Area Schools

AISD contends that "[e]ven assuming arguendo that Plaintiff can establish Amarillo

8

ISD failed to accommodate Jaxson's disability [on] August 24, 2022, the District is still entitled to summary judgment as Plaintiff cannot establish the intentional discrimination necessary to recover monetary damages under Section 504 and the ADA." ECF No. 46 at 14. AISD suggests that a Section 504 or ADA plaintiff must show that a defendant "acted with something more than deliberate indifference" to be entitled to compensatory damages. *Id.*; *see also* ECF No. 70 ("[T]he evidence presented simply does not allow the Court to conclude that Amarillo ISD knew the consequential limitations of Jaxson's epilepsy on August 24, 2022, or that the District otherwise engaged in something *more than deliberate indifference.* (emphasis added)).

If AISD's "cluster" argument was borderline frivolous on the facts, its "something more than deliberate indifference" argument is four-square foreclosed on the law. In *A. J. T. v. Osseo Area Schools*, the Supreme Court expressly rejected this heightened standard, holding that "ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that apply in other disability discrimination contexts." 605 U.S. at 345. The Court noted that "[n]othing in the text of Title II of the ADA or Section 504 of the Rehabilitation Act suggests that such claims should be subject to a distinct, more demanding analysis" and there is "no textual indication that the protections of either disability discrimination statute apply with lesser force to *certain* qualified individuals bringing *certain* kinds of claims." *Id.* (citations omitted).

After *A. J. T.*, "the appropriate standard for Section 504 claims is deliberate indifference"—nothing more and nothing less.[4] *W.H. by & through Larry G. v. Fort Bend*

---

[4] As education law specialists, counsel for AISD should have been aware of this and, at a minimum, brought this major change in the law to the Court's attention. Instead, citing to cases that predate *A. J. T.*, AISD repeatedly insists that "'something more' than deliberate indifference" is "required by the Fifth Circuit to establish intentional discrimination." ECF No. 70 at 11 (citing *Chupka v. Pflugerville Indep. Sch. Dist.*, No. 21-50356, 2022 WL 1056101, at *2 (5th Cir. Apr. 8, 2022)). That is simply no longer the case after *A. J. T. v. Osseo Area Schools.*

9

*Indep. Sch. Dist.*, No. 4:24-CV-1515, 2025 WL 2147067, at \*20 (S.D. Tex. July 29, 2025) (citing *A. J. T.*, 605 U.S. at 345). While "[t]he Fifth Circuit has explained that deliberate indifference is a 'high bar,'" that bar is undoubtedly lower now than before the *A. J. T.* decision. *Id.*, at \*21 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)). Even so, "[b]ecause deliberate indifference is a lesser form of intent rather than a heightened degree of negligence, neither negligent nor merely unreasonable responses are enough." *Id.* (quoting *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019)). "Instead, to clear the 'high bar' of proving deliberate indifference, the challenged action must be 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). "A plaintiff need not prove that the defendant had personal ill will or animosity toward the disabled person," but they "must show that the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *Id.*, at \*20 (citing *A. J. T.*, 605 U.S. at 345).

Here, a jury could easily conclude that AISD's actions on August 24, 2022 were "clearly unreasonable." Jaxson suffered an epileptic episode that caused him to lie suffering on the ground for nearly twenty minutes. Almost a dozen AISD employees, including two nurses, huddled around Jaxson while he was seizing. But not one administered his rescue medication—even though it "was on the ground sitting right beside Jaxson." *Id.* Even with paramedics present, no one took action until Jaxson's father arrived. *See* ECF No. 67 at 19 ("Gabe asked how long Jaxson had been down, and he was told 17 minutes. Gabe stated, 'It's too long. We have to load him up and go immediately.' The emergency personnel immediately loaded Jaxson in the ambulance." (internal citation omitted)). A reasonable jury could conclude that these actions[5] show that AISD "disregarded a strong likelihood that the

---

[5] While the parties' summary judgment briefing focuses on the events of August 24, 2022, the Mendozas' complaint also contends that AISD inadequately trained its staff to respond to medical

challenged action would result in a violation of federally protected rights." *W.H.*, 2025 WL 2147067, at *20.

Because a reasonable jury could conclude that AISD violated Jaxson's rights under the ADA and Section 504 of the Rehabilitation Act, AISD's Motion for Summary Judgment is **DENIED**. A jury will determine at least the following two questions of fact: (1) whether Jaxson had a seizure lasting longer than five minutes on August 24, 2022, such that AISD violated Jaxson's Seizure Action Plan by not administering his rescue medication; and (2) whether AISD intentionally discriminated against Jaxson by reason of his disability.

CONCLUSION

For the foregoing reasons, AISD's Motion for Summary Judgment (ECF No. 45) is **DENIED**.

**SO ORDERED.**

June **25**, 2026

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

emergencies like Jaxson's. *See Mendoza*, 2025 WL 1239906, at *5 ("Plaintiffs' claims are premised on the theories that AISD refused to train staff in a manner that would have reasonably accommodated [Jaxson]'s disability and that AISD staff refused to administer his emergency medication.").

11